BEFORE THE THIRD DIVISION, DECEMBER 26, 1951

No. 56193.—W. J. Westerfield v. United States, petition 6776–R (New Orleans).

Ekwall, Judge:    This is a petition for remission of additional duties filed under authority of section 489 of the Tariff Act of 1930 (19 U. S. C. § 1489), and involves an importation described as "Electrical Trouble Lights with Permanent Magnetic Base."    The invoice upon which entry was based shows a unit

price of $2.90 and a home consumption unit price of $3.10. Entry was made at the latter figure. Appraisal was made at a unit price of $3.85 plus 0.75 per centum control tax, and additional duty was assessed because of the undervaluation.

At the hearing held at the port of New Orleans, the petitioner introduced the testimony of Mr. Warren Westerfield who was the general manager and vice president of the importing concern (Oweson & Co., Inc.) at the time the merchandise was imported. This witness testified that prior to the time of the arrival of the shipment in question, the New Orleans office of the petitioner received consular invoices from the manufacturer of this merchandise showing a unit price of $2.90 and a home consumption price of $3.85 each. Before the shipment arrived the petitioner received a new set of invoice prices for this merchandise, and upon entry petitioner used the invoice that he deemed applicable, which showed a price per unit of $3.10. Petitioner was not familiar with customs practice and used the services of Mr. Ittmann, a customhouse broker, in making entry of the merchandise. The witness stated that he delivered the papers relating to this shipment to a young lady in the office of the broker, but that he did not see the broker himself until the value of the merchandise was questioned by the customs officials, at which time he was asked for the original invoice. Petitioner stated further that the actual purchase price of the merchandise was $3.10 per unit and that he believed that to be the proper value for duty purposes.

On cross-examination, the witness testified that the first invoice received (exhibit 1) stated the figure of $3.85 in the column headed "Current Price (Home Consumption Per Unit)" and that the second invoice, which is part of the official file, showed a price of $3.10 per unit, but that he was billed for only $2.90.

The Government introduced the testimony of Mr. Ittmann, the customs broker who made entry of the merchandise. His testimony contradicted that of the former witness in that he stated that Mr. Westerfield turned over the papers to him personally and that to his knowledge no papers were turned over to him by the young lady in his office. This witness stated that he asked Mr. Westerfield to furnish him with all documents and correspondence pertaining to this shipment; that Mr. Westerfield turned over certain documents which the broker submitted to the United States appraiser; and that the merchandise was entered at a value of $3.10. This witness did not know of the existence of another invoice indicating a price of $3.85 until after he was notified by the Government that his client was penalized for false invoices, at which time Mr. Westerfield gave him the other invoice. The invoice No. 391 used by this witness in making entry was marked "REPLACING INVOICE #196 * * *." He did not ask Mr. Westerfield for the other invoice for the reason that the customs officials did not ask him for it.

There was received in evidence as exhibit 2 a letter from the manufacturer, dated February 24, 1949, advising the importing concern that a new consular invoice was going forward replacing the original invoice. This letter contains the further information:

As you see, the current price for home consumption has been changed to $3.10 also for this shipment. We feel sure that this new invoice will reach you before the arrival of the goods and this should help you saving [sic] a lot of duty.

Respondent's exhibit A consists of a letter from the manufacturer to the importer under date of February 22, 1949, in which the writer expresses surprise that said importer was obliged to pay duty on the basis of the foreign market value. The writer continues:

* * * However we have communicated with the United States Embassy in Oslo and will tomorrow swear to the fact that the price will be reduced for the

home consumption when we again start selling lamps in Norway. We hope in this way to get the price $3.85 altered to $3.10. * * * We had not the slightest idea that the duty should not be paid on the export price but on the highest obtainable price on the home market. We feel sure that you will get your money back as we have done our utmost here.

It seems apparent from the record that the petitioner in his dealings with the customs authorities was without knowledge of the law governing his entry. It is also true that his customs broker in making entry used the price given him by his client and was unaware of an invoice showing any other price until long after entry was made.

It further appears from the record that the customs authorities considered the invoice upon which entry was made to be fraudulent and accepted a compromise settlement of a sum representing the loss of revenue in lieu of forfeiture of the merchandise, which was not available.

It is unfortunate that Mr. Westerfield, the representative of the importer, was unacquainted with the proper method of procedure and that he did not turn over to his broker all of the papers in connection with the case prior to entry. However, this member of the court heard the testimony of Mr. Westerfield at the trial in New Orleans and is convinced that his failure to turn over to his broker the first invoice, No. 196 (petitioner's exhibit 1), was not due to any dishonest intention. His demeanor was frank and forthright. He stated that the second invoice was received prior to the receipt of the merchandise and prior to the time of making entry and that the letter of explanation (petitioner's exhibit 2) also was received prior to the shipment. The fact that the second invoice, used as the basis of entry by Mr. Ittmann, the broker, plainly showed that it replaced another invoice previously submitted, would seem to rather conclusively negate the idea of bad faith on the part of Mr. Westerfield. He apparently felt that the action of the manufacturer in lowering the home consumption price from $3.85 to $3.10 each was a *bona fide* transaction, and he would hardly have considered it discreet or safe to submit an invoice for the inspection of the Government officials, which showed that it replaced another and earlier one, had he entertained the least idea at the time of defrauding the revenue of the United States. The fact that he did submit the second or corrected invoice would seem to prove his contention that he honestly felt the first invoice was of no further value or concern to anyone. It must be remembered that the testimony shows this one transaction was his first and only experience in the importation of merchandise.

On the question of the person to whom Mr. Westerfield turned over the documents relating to this shipment, his testimony and that of Mr. Ittmann were in direct opposition. Mr. Westerfield swore that he talked to a lady in the broker's office and left the papers with her without seeing or talking to Mr. Ittmann. On the other hand, Mr. Ittmann was fairly sure that he talked to Mr. Westerfield on that occasion and that he himself received the papers. There was a young lady employed by Mr. Ittmann at the time in question but she was not produced as a witness, the testimony being that she was no longer employed there. However, such a direct conflict in the testimony is not entirely novel in the trial of cases and, while rather confusing in this instance, it is not necessary for the court to reconcile the testimony in order to reach a conclusion on the only question before it, namely, the good faith of the petitioner. Both of these witnesses were men of apparent standing and integrity, and the court is convinced that neither intentionally misstated any of the facts of the case.

On the record we find that the entry of the merchandise at a value lower than hat found on final appraisement was without intention to defraud the Government or deceive its officials. The petition is therefore granted.